UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SHAWN NOWAK,

                                   Plaintiff,

            - against -

CITY OF YONKERS and CITY OF YONKERS
DEPARTMENT OF PUBLIC WORKS,

                                   Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-10972 (CS)

<u>Appearances</u>:

Marshall B. Bellovin
Steven Balken
Ballon Stoll P.C.
New York, New York
*Counsel for Plaintiff*

Dusan Lakic
Second Deputy Corporation Counsel
Yonkers, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is the partial motion to dismiss of the City of Yonkers (the "City") and

the City of Yonkers Department of Public Works (the "DPW" and together with the City,

"Defendants").  (ECF No. 21.)  For the following reasons, the motion is GRANTED.

I.      **BACKGROUND**

        I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended

Complaint.  (ECF No. 16 ("SAC").)

A.    **Facts**

Plaintiff Shawn Nowak is an African American woman.  (SAC ¶ 18.)  On December 15, 2018, Plaintiff began her employment with the City as a clerk in the Mayor's Office.  (*Id.* ¶ 19.) At that time, she had eight years of experience with clerical work.  (*Id.* ¶ 24.)  In August 2019, after passing the Civil Service Exam, Plaintiff accepted a clerk position with the DPW.  (*Id.* ¶ 20.)  Her job responsibilities included generating and perfecting invoices for landscapers, coordinating with technological specialists regarding technical issues, calculating employee benefits and drafting daily reports on waste disposal.  (*Id.* ¶ 23.)

In October 2019, the DPW hired Grace Borrani, a Hispanic woman, to perform clerical duties alongside Plaintiff.  (*Id.* ¶¶ 25-26.)  During their employment at the DPW, Plaintiff and Borrani had identical positions, base salaries and supervisors.  (*Id.* ¶¶ 30-33.)  Plaintiff alleges, however, that she had substantially more responsibilities and was exponentially more productive than Borrani.  (*Id.* ¶¶ 35-36.)  Nevertheless, according to Plaintiff, the DPW treated Borrani more favorably.  (*Id.* ¶ 37.)  In August 2020, after she had a child, Plaintiff had to take three months of unpaid leave because she did not have enough sick time to cover the time off.  (*Id.* ¶ 38.)  By contrast, when Borrani had a child in 2020, the DPW granted her six months of paid leave, even though Borrani began working at the DPW after Plaintiff and had not accrued sufficient sick time to cover a leave of that duration.  (*Id.* ¶¶ 39-41.)

On March 24, 2022, Saida Jereis, Plaintiff's manager, assigned Plaintiff an "impossible amount of data-crunching work to complete prior to the deadline provided (by the end of business)."  (*Id.* ¶¶ 42, 47.)  After Plaintiff explained to Jereis that she was unable to complete the work in the time provided, Glen Dambosio, Plaintiff's "labor supervisor," (*id.* ¶ 47), issued Plaintiff a two-week suspension without pay and a notice of discipline ("NOD") for

insubordination, (*id.* ¶¶ 43-44, 47).  The NOD stated that Plaintiff had ignored written and verbal warnings by both Jereis and Dambosio, which Plaintiff contends is false.  (*Id.* ¶ 47.)  When Plaintiff reached out to Dambosio about the NOD, Dambosio replied that he was "just doing what he was told."  (*Id.* ¶ 48.)  Neither Jereis nor Dambosio are African American.  (*Id.* ¶¶ 42, 45.)

On or around May 31, 2022, Anthony Dellasandro, a Caucasian maintenance worker, called Plaintiff the N-word.  (*Id.* ¶¶ 49-50.)  Then, on June 17, 2022, Dellasandro got into a shouting altercation with Plaintiff, during which he yelled at Plaintiff, "F__k you and your baby!" and shouted at Plaintiff to quit her job.  (*Id.* ¶ 54.)  After the incident, Plaintiff was informed that neither she nor Dellasandro would receive overtime until the matter was resolved by the DPW's Human Resources ("HR") department, but Dellasandro nevertheless did get some overtime.  (*Id.* ¶ 55.)  On July 5, 2022, Plaintiff spoke with HR about the June 17, 2022 incident. (*Id.* ¶ 56.)  In the meeting, she complained that Dellasandro had previously called her the N-word and that she felt harassed by Dellasandro's conduct.  (*Id.*)  Although Plaintiff was entitled to overtime again after the meeting, Plaintiff received very little overtime as compared to prior months.  (*Id.* ¶¶ 57-58.)  Plaintiff alleges, however, that Dellasandro's overtime increased in the months after the incident.  (*Id.* ¶ 59.)  Plaintiff attributes this disparate treatment to Mike Wangenstein, shop steward, and Brian Napoletano, another supervisor, both of whom are Caucasian.  (*Id.* ¶¶ 60-62.)  Plaintiff also alleges that, in or around July 2022, Wangenstein himself told Plaintiff, "I can whip you into doing more work," which Plaintiff alleges is a racist reference to African American slavery.  (*Id.* ¶ 63.)

Then, for several weeks in July 2022, during a heat wave, the door to Plaintiff's workspace was broken, causing unbearable heat inside Plaintiff's booth.  (*Id.* ¶ 64.)  Plaintiff

reached out to both Napoletano and Wangenstein about repairing the door, but they did not respond. (*Id.* ¶ 66.) Thereafter, Plaintiff attempted to submit a work order to a vendor – which Plaintiff had been authorized to do in the past to repair broken equipment – but on July 25, 2022, Napoletano reprimanded Plaintiff for her attempt. (*Id.* ¶¶ 66-67.)

In early August 2022, Napoletano and Jereis transferred Plaintiff to a new post, where her job duties changed from clerical work to cleaning garbage and bathrooms. (*Id.* ¶ 68.) Plaintiff alleges that Borrani, who returned from maternity leave around this same time, was allowed to keep her clerical role. (*Id.* ¶ 69.) Plaintiff twice attempted to contact the HR manager about the transfer, but she did not receive a response. (*Id.* ¶ 70.) Plaintiff alleges that the combination of the transfer and the "prior mistreatment and condoning of racial slurs" created an "intolerable form of labor." (*Id.* ¶ 71.) Accordingly, on August 12, 2022, Plaintiff emailed Napoletano and HR a notice that she would resign on August 26, 2022. (*Id.*) Plaintiff alleges that, between the notice and her resignation, Jereis hid the key to the women's restroom from her between four and six times. (*Id.* ¶ 73.)

Plaintiff alleges that, as a result of Defendants' conduct, Plaintiff experienced "severe exacerbation of her health conditions and additional new emotional distress, mental anguish[,] pain and suffering, lost quality of life, lost income, [and] lost benefits." (*Id.* ¶ 78.)

**B.**   **Procedural History**

On December 19, 2023, Plaintiff filed her initial complaint, asserting claims for race discrimination, hostile work environment, and retaliation under Title VII, § 1981, and the New York State Human Rights Law ("HRL"). (ECF No. 1.) On January 26, 2024, Defendants filed a pre-motion letter in anticipation of their motion to dismiss, (ECF No. 8), and on February 8, 2024, in response, Plaintiff filed her First Amended Complaint, substituting § 1983 claims for

the § 1981 claims, (ECF No. 11).  At the pre-motion conference, I granted Plaintiff leave to amend her complaint again, (*see* Minute Entry dated Mar. 7, 2024), and on April 8, 2024, Plaintiff filed the SAC, (ECF No. 16).  The instant motion followed.

## II.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

III.    **DISCUSSION**

    A.    **Claims Against the DPW**

        As an initial matter, Defendants argue that the claims against the DPW must be dismissed

because it is a department of the City and thus cannot be sued separately from the City itself.

(*See* ECF No. 22 ("Ds' Mem.") at 5 n.1.)  Plaintiff did not address this assertion, and therefore

has abandoned her claims against the DPW.  "Where a party is represented, a court may, when

appropriate, infer from that party's partial opposition that relevant claims or defenses that

are not defended have been abandoned." *Greene v. Northwell Health Inc.*, No. 23-CV-4846,

2024 WL 4287875, at *9 (E.D.N.Y. Sept. 25, 2024); *see Black Lives Matter v. Town of*

*Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018).  In any event, I agree with Defendants

that Plaintiff cannot maintain a claim against the DPW.  "[U]nder New York law, municipal

agencies or departments do not have the capacity to be sued." *Smith v. Westhab Traverse House*,

No. 24-CV-4961, 2025 WL 26067, at *1 (S.D.N.Y. Jan. 2, 2025); *see Robinson v. City of*

*Yonkers Police Dep't*, No. 22-CV-3333, 2023 WL 3174317, at *1 (S.D.N.Y. May 1, 2023);

*Quiller v. City of Yonkers*, No. 06-CV-6848, 2010 WL 46868, at *1 (S.D.N.Y. Jan. 5, 2010).

Because DPW is a municipal department, it cannot be sued, and accordingly, the claims against

it must be dismissed.

B.    **HRL Claims**

Defendants move to dismiss the First, Fourth, and Seventh causes of action – which
assert claims for race discrimination, retaliation and hostile work environment under the HRL –
on the ground that Plaintiff did not file a notice of claim.  (*See* Ds' Mem. at 7-18.)  Plaintiff
maintains that a notice of claim was not required.  (*See* ECF No. 25 ("P's Opp.") at 2-8.)

General Municipal Law ("GML") § 50-e(1)(a) requires service of a notice of claim "[i]n
any case founded upon tort where a notice of claim is required by law as a condition precedent to
the commencement of an action . . . ."  N.Y. Gen. Mun. Law § 50-e(1)(a).  GML § 50-i(1)
precludes commencement of an action against a city "for personal injury, wrongful death or
damage to real or personal property alleged to have been sustained by reason of the negligence or
wrongful act of such city," unless a notice of claim has been served in compliance with § 50-e.
*Id.* § 50-i(1).  In *Margerum v. City of Buffalo*, the New York Court of Appeals held that human
rights claims "are not tort actions under section 50-e and are not personal injury, wrongful death,
or damage to personal property claims under section 50-i," so the GML notice of claim
requirement does not apply to them.  24 N.Y.3d 721, 730 (2015).

The question then is whether a different provision of state or local law requires a notice
of claim for HRL actions against the City.  Defendants maintain that Section 244 of the New
York State Second Class Cities Law ("SCCL") does.  (*See* Ds' Mem. at 8-18.)

Section 244 of the SCCL provides:

> No civil action shall be maintained against the city for damages or injuries to
> person or property sustained in consequence of any street, highway, bridge,
> culvert, sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or
> obstructed unless it appears that written notice of the defective, unsafe, dangerous,
> obstructed condition of such street, highway, bridge, culvert, sidewalk or
> crosswalk was actually given to the commissioner of public works, and that there
> was a failure or neglect within a reasonable time after the giving of such notice to
> repair, or remove the defect, danger or obstruction complained of, or, in the

absence of such notice, unless it appears that such defective, unsafe, dangerous or obstructed condition existed for so long a period that the same should have been discovered and remedied in the exercise of reasonable care and diligence. But no such action shall be maintained for damages or injuries to the person sustained solely in consequence of the existence of snow or ice upon any sidewalk, crosswalk or street, unless written notice thereof, relating to the particular place, was actually given to the commissioner of public works and there was a failure or neglect to cause such snow or ice to be removed, or the place otherwise made reasonably safe within a reasonable time after the receipt of such notice. *The city shall not be liable in a civil action for damages or injuries to persons or property or invasion of personal or property rights, of any name or nature whatsoever, whether casual or continuing, arising at law or in equity, alleged to have been caused or sustained, in whole or in part, by or because of any omission of duty, wrongful act, fault, neglect, misfeasance or negligence on the part of the city, or any of its agents, officers or employees, unless a notice of claim shall have been made and served in compliance with section fifty-e of the general municipal law.* Every action upon such claim shall be commenced pursuant to the provisions of section fifty-i of the general municipal law.

N.Y. Second Class Cities Law § 244 (emphasis added). The SCCL applies to the City of Yonkers. *See Ponsrok v. City of Yonkers*, 254 N.Y. 91, 93 (1930). Defendants argue that the penultimate sentence of § 244 is broad enough to cover human rights claims. (*See* Ds' Mem. at 8-9, 11-18.) In opposition, Plaintiff argues that Yonkers Local Law ("LL") No. 3-2001 superseded § 244, and thereby repealed the penultimate sentence of § 244, and that, in any event, § 244 does not cover human rights claims. (*See* P's Opp. at 2-8.)

1.    **Effect of LL No. 3-2001 on § 244**

Section 4 of the SCCL provides that "[a] provision of this chapter shall apply . . . until such provision is superseded pursuant to the municipal home rule law, was superseded pursuant to the former city home rule law or is or was otherwise changed, repealed or superseded pursuant to law." Courts have interpreted § 4 as allowing cities to supersede or amend § 244 through local laws. *See Carlino v. City of Albany*, 499 N.Y.S.2d 814, 816 (App. Div. 3d Dep't 1986); *Fullerton v. City of Schenectady*, 138 N.Y.S.2d 916, 918-20, (App. Div. 3d Dep't 1955), *aff'd*, 309 N.Y. 701 (1955).

The substantive provision of LL No. 3-2001 provides as follows:

No civil action shall be maintained against the city, its officers or employees for damage to property or injury to person or death sustained in consequence of any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, or any part or portion of any of the foregoing including any encumbrances thereon or attachments thereto, being out of repair, unsafe, dangerous or obstructed, unless it appears that written notice of the defective, unsafe, dangerous or obstructed condition, was actually given to the Commissioner of the Department of Public Works or any person or department authorized by the Commissioner to receive such notice by certified or registered mail, or where there was previous existence of the defective, unsafe, dangerous or obstructed condition, and written notice thereof was given to the Commissioner by certified or registered mail, or there was a failure or neglect within a reasonable time after the receipt of such notice to repair or remove the defect, danger or obstruction complained of, or the place otherwise made reasonably safe.

Nor shall any civil action be maintained against the city, its officers or employees for damages or injuries to person or property sustained solely in consequence of the existence of snow or ice upon any street, highway, bridge, wharf, culvert, sidewalk or crosswalk, unless prior written notice thereof, specifying the particular place, was actually given to the Commissioner by certified or registered mail, and there was a failure or neglect to cause such snow and ice to be removed or to make the place otherwise reasonably safe within a reasonable time after the receipt of such notice.  The term street [a]s used herein shall include the curbstone, an avenue, underpass, road, alley, lane, boulevard, concourse, parkway, road or path within a park, park approach, driveway, thoroughfare, public way, public square, and public parking area.  The term sidewalk as used herein shall include an underpass, pedestrian walk or path, step or stairway.  The term bridge as used herein shall include a viaduct or overpass.  The term wharf as used herein shall include dock and pier.

Local Law No. 3-2001.  It also states that "[t]his local law is intended to amend and supersede any inconsistent provisions of section two hundred forty-four of the Second Class Cities Law." *Id.*

LL No. 3-2001 does not address the final two sentences of § 244.  Plaintiff argues that the omission renders the final sentences of § 244 inconsistent with LL No. 3-2001, such that those final sentences no longer apply to claims brought against the City.  (*See* P's Opp. at 3.) Defendants argue, on the other hand, that LL No. 3-2001 amends other portions of § 244 and that

the untouched final sentences of § 244 remain effective.  (*See* Ds' Mem. at 10-11.)  I agree with Defendants.

LL No. 3-2001 does not state that it is replacing § 244; it states only that it is "intended to amend and supersede any *inconsistent provisions*."  Local Law No. 3-2001 (emphasis added). LL No. 3-2001 is only inconsistent with § 244 insofar as it relates to personal injury or property damage from dangerous or icy streets, highways, bridges, etc.  There is no express repeal of the last two sentences of § 244, and thus any repeal of the penultimate sentence would have to be implied.  It is a well-settled canon of statutory interpretation that "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest."  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007).  "An implied repeal will only be found where provisions in two statutes are in irreconcilable conflict or where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute."  *Branch v. Smith*, 538 U.S. 254, 273 (2003); *see Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019).  Here, there is no irreconcilable conflict between LL No. 3-2001 and § 244 as it concerns the penultimate sentence of § 244.  As just noted, LL No. 3-2001 simply amended the notice requirements for actions against the City for damages sustained from "any street, highway, bridge," etc.  The penultimate sentence of § 244 can operate concurrently with the amended provisions in LL No. 3-2001, just as it operated concurrently with § 244's provisions regarding streets, highways, etc. before the amendment.  LL No. 3-2001 applies to streets, highways, etc., and § 244 applies to everything else.

Plaintiff's argument that LL No. 3-2001's omission of § 244's penultimate sentence evinces the City's intent to repeal the penultimate sentence might hold more weight (although in my view, not enough) if that omission were the only difference between LL No. 3-2001 and

10

§ 244.  But it is not.  LL No. 3-2001 made several amendments to the first portion of § 244 concerning notice for actions relating to damages from streets, highways, etc.  Because LL No. 3-2001 states that it is intended to amend and supersede only inconsistent provisions, it thus seems more likely that the omission evinces the City's intent to leave intact the penultimate sentence, which it does not address, rather than to repeal it altogether.

Accordingly, LL No. 3-2001 did not repeal the penultimate sentence of § 244.

### 2.    SCCL § 244

Having found that LL No. 3-2001 did not repeal the penultimate sentence of § 244, I must next determine whether that sentence provides a basis for requiring a notice of claim in human rights actions.  I find that it does.

As noted above, the penultimate sentence of § 244 requires a notice of claim

in a civil action for damages or injuries to persons or property or invasion of personal or property rights, of any name or nature whatsoever, whether casual or continuing, arising at law or in equity, alleged to have been caused or sustained, in whole or in part, by or because of any omission of duty, wrongful act, fault, neglect, misfeasance or negligence on the part of the city, or any of its agents, officers or employees . . . .

N.Y. Second Class Cities Law § 244.

In their brief, Defendants cite to several cases where courts have interpreted similar or identical statutory provisions to require notices of claim in HRL actions.  (*See* Ds' Mem. at 11-18.)  For instance, New York Town Law § 67 requires a notice of claim for "[a]ny claim . . . which may be made against the town or town superintendent of highways for damages for wrong or injury to person or property or for the death of a person."  N.Y. Town Law § 67.  In *Croci v. Town of Haverstraw*, the court found that the "injury to person" language is "broad enough to include an employment discrimination claim based on Executive Law § 296[, the HRL]."  175 F.

11

Supp. 3d 373, 389 (S.D.N.Y. 2016); *see Picciano v. Nassau Cnty. Civ. Serv. Comm'n*, 736

N.Y.S.2d 55, 61 (App. Div. 2d Dep't 2001) (same).

As another example, New York County Law § 52(1) requires a notice of claim for:

[a]ny claim . . . against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees . . . .

N.Y. Cnty. Law § 52(1). Courts have held that "N.Y. County Law § 52(1) has broader

application than General Municipal Law § 50-e" and that the notice requirements therein apply

to HRL claims. *Anderson v. Nassau Cnty. Dep't of Corr.*, 558 F. Supp. 2d 283, 303 (E.D.N.Y.

2008); *see Feldman v. Nassau Cnty.*, 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) (same), *aff'd*,

434 F.3d 177 (2d Cir. 2006).

The penultimate sentence of § 244 is nearly identical to County Law § 52(1), and it

contains but is not limited to the "injury to person" language from Town Law § 67. As both

those provisions encompass HRL claims, I likewise find that the penultimate sentence of § 244 is

broad enough to include such claims.

Plaintiff argues that § 244 is distinguishable from County Law § 52(1) and Town Law

§ 67 because the latter provisions appear in standalone paragraphs, whereas the penultimate

sentence of § 244 appears at the end of a paragraph otherwise setting forth notice requirements

for actions relating to damages from streets, highways, etc. (*See* P's Opp. at 4-8.) Plaintiff is

correct that, when interpreting a statutory provision, "[t]he text's plain meaning can best be

understood by looking to the statutory scheme as a whole and placing the particular provision

within the context of that statute." *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101

F.4th 176, 181 (2d Cir. 2024). But the plain language of the penultimate sentence – which

requires a notice of claim "in a civil action for damages or injuries to persons or property or

invasion of personal or property rights, of any name or nature whatsoever" – cannot reasonably

be limited to actions based solely on damages from streets, highways, etc.  "As the Supreme

Court has frequently observed, use of the word 'any' in statutory text generally indicates [the

legislature's] intent to sweep broadly to reach all varieties of the item referenced."  *Cohen v. JP

Morgan Chase & Co.*, 498 F.3d 111, 117 (2d Cir. 2007); *see Eisenhauer v. Culinary Inst. of Am.*,

84 F.4th 507, 517 (2d Cir. 2023) ("'Any' means 'every'; its meaning is expansive rather than

restrictive.").  Accordingly, "any name or nature whatsoever" must be interpreted expansively to

include all variations of civil actions "for damages or injuries to persons or property or invasion

of personal or property rights."  N.Y. Second Class Cities Law § 244.  And, as noted above, that

language is broad enough to include HRL actions.  The formatting of the statute simply does not

bear the weight Plaintiff assigns it.

Thus, Plaintiff was required to file a notice of claim.  Because Plaintiff did not allege in

her SAC (or even in her opposition) that she filed a notice of claim, Plaintiff's HRL claims must

be dismissed.  *See Rodriguez v. Hostos Cmty. Coll.*, No. 20-CV-8143, 2021 WL 4555598, at *2

(S.D.N.Y. Oct. 5, 2021); *United States v. N.Y.C. Dep't of Educ.*, No. 16-CV-4291, 2017 WL

1169653, at *4 (S.D.N.Y. Mar. 28, 2017).

**C.**     <u>**Section 1983 Claims**</u>

Defendants move to dismiss the Third, Sixth, and Ninth causes of action – which assert

claims for race discrimination, retaliation, and hostile work environment under 42 U.S.C.

§ 1983 – for failure to state a claim.  (*See* Ds' Mem. at 19-23.)

"A municipality may be liable under 42 U.S.C. § 1983 if a municipal policy or custom

causes deprivation of rights protected by the Constitution."  *Thomas v. City of Troy*, 293 F. Supp.

3d 282, 297-98 (N.D.N.Y. 2018) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658,

690-91 (1978), *on reconsideration sub nom. Thomas v. Mason*, No. 17-CV-626, 2019 WL

6111572 (N.D.N.Y. Nov. 18, 2019).  "For a *Monell* claim to survive a motion to dismiss, a

plaintiff must allege sufficient factual detail and not mere boilerplate allegations that the

violation of the plaintiff's constitutional rights resulted from the municipality's custom or official

policy."  *Id.* at 298.  In other words, "a plaintiff must plausibly allege both the existence of a

municipal policy and that the policy caused (*i.e.*, was the moving force behind) plaintiff's

injury."  *Murphy v. City of N.Y.*, 719 F. Supp. 3d 357, 373 (S.D.N.Y. 2024).  A plaintiff may

adequately plead a policy or custom by plausibly alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that
> caused the particular deprivation in question; (3) a practice so consistent and
> widespread that, although not expressly authorized, constitutes a custom or usage
> of which a supervising policy-maker must have been aware; or (4) a failure by
> policymakers to provide adequate training or supervision to subordinates to such
> an extent that it amounts to deliberate indifference to the rights of those who come
> into contact with the municipal employees.

*Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 397-98 (S.D.N.Y. 2021).

Plaintiff argues that she has stated a *Monell* claim under a failure to train theory.  (*See* P's

Opp. at 8.)  I disagree.

"[A] municipality can be liable for failing to train its employees where it acts with

deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its

policies without more training."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d

Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989)).  Failure to train,

however, is a narrow basis of liability, and "[a] municipality's culpability for a deprivation of

rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563

U.S. 51, 61 (2011); *see City of Oklahoma v. Tuttle*, 471 U.S. 808, 822 (1985) (plurality opinion)

(policy of "inadequate training" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"); *Ocasio v. City of Canandaigua*, 513 F. Supp. 3d 310, 326 (W.D.N.Y. 2021) ("Liability based on a failure to train is the most tenuous form of municipal liability under *Monell*."). A municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton*, 489 U.S. at 388. "To establish 'deliberate indifference,' a plaintiff must show that: [1] a policymaker knows 'to a moral certainty' that city employees will confront a particular situation; [2] the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult' or 'there is a history of employees mishandling the situation;' and [3] 'the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Wray v. City of N.Y.*, 490 F.3d 189, 195-96 (2d Cir. 2007) (quoting *Walker v. City of N.Y.*, 974 F.2d 293, 297-98 (2d Cir. 1992)); *see Kiss v. Torres*, No. 21-CV-10391, 2024 WL 1210941, at *24 (S.D.N.Y. Mar. 19, 2024) (to the same effect).

The SAC contains a single allegation about Defendants' alleged failure to train: that, at no time during her employment with Defendants, did she or her co-workers receive "proper anti-racial discrimination and/or bias training." (SAC ¶ 21.) This allegation is insufficient to state a *Monell* claim for several reasons. As an initial matter, "[t]o set forth a failure to train claim, a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Taranto v. Putnam Cnty.*, No. 21-CV-2455, 2023 WL 6318280, at *19 (S.D.N.Y. Sept. 28, 2023). Here, Plaintiff alleges in a conclusory manner that Defendants failed to provide "proper" anti-discrimination training to their employees, (SAC ¶ 21), but that allegation falls woefully short of identifying a specific deficiency in the training program. "Simply put, the sum total of

15

Plaintiff['s] failure-to-train claim is based on a threadbare description of the [City's] training, and is the type of conclusory claim that courts routinely dismiss." *Taranto*, 2023 WL 6318280, at *19 (collecting cases) (granting motion to dismiss where plaintiffs alleged only that the county "failed to train its officers, including with respect to the use of force, tactics with respect to responding to emotionally disturbed persons and the use of weapons during police encounters"); *see Ciotti v. City of N.Y.*, No. 23-CV-10279, 2025 WL 308022, at *24 (S.D.N.Y. Jan. 27, 2025) (granting motion to dismiss because complaint contained only conclusory allegations that the NYPD "willfully disregarded the obvious need to train its employees . . . regarding postpartum and/or postnatal depression and sexual abuse"); *Vasquez v. City of N.Y.*, No. 20-CV-4641, 2023 WL 8551715, at *7 (S.D.N.Y. Dec. 11, 2023) (granting motion for judgment on the pleadings where plaintiff "[did] not identify procedural manuals or training guides, nor [did] he highlight relevant particular aspects of police training regarding excessive force, as would be required to plead a failure to train claim").

Furthermore, to state a claim for failure to train, Plaintiff must also allege that the training deficiency "caused the constitutional deprivation." *Taranto*, 2023 WL 6318280, at *19. Plaintiff, however, only makes conclusory assertions that "Defendants' failure to properly train their employees in anti-racial discrimination/bias training caused Plaintiff to be discriminated against by her supervisors and coworkers." (SAC ¶ 97; *see id.* ¶¶ 116, 135.) These conclusory assertions are insufficient to plausibly allege that a deficiency in training caused Plaintiff's injuries. *See Taranto*, 2023 WL 6318280, at *19 (collecting cases) (granting motion to dismiss where plaintiff merely alleged that defendant "fail[ed] to properly train and/or supervise its officers resulting in the unlawful actions complained of herein"); *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (granting motion to dismiss where plaintiff failed to

16

plead "any facts suggesting that an alleged training deficiency caused his constitutional injury, for example by identifying procedural manuals or training guides or by highlighting relevant particular aspects of police training or supervision").

Finally, Plaintiff must plead that the City's failure to train its employees amounted to deliberate indifference. *See Canton*, 489 U.S. at 388; *Williams v. Fryermuth*, No. 23-CV-2156, 2024 WL 4557444, at *6 (S.D.N.Y. Oct. 23, 2024). But there are no facts in the SAC from which I can conclude that Defendants acted with deliberate indifference in failing to provide "proper" anti-discrimination training. Although Plaintiff alleges that the discrimination she experienced was "a result of intentional actions by Defendants, and/or deliberate indifference by Defendants," (SAC ¶ 94), that allegation is entirely conclusory. *See Breton v. City of N.Y.*, 404 F. Supp. 3d 799, 819 (S.D.N.Y. 2019) ("Although the plaintiff makes claims such as the Police Commissioner was deliberately indifferent to his duty to implement sufficient training procedures, these allegations are conclusory and are not enough to nudge the plaintiff's claims across the line from conceivable to plausible.").

Plaintiff argues that she plausibly alleged deliberate indifference because the SAC contains sufficient factual allegations to establish a pattern of similar constitutional violations. (*See* P's Opp. at 9-10.) "[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of a failure to train." *Bertuglia v. City of N.Y.*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012); *see Flannery v. Cnty. of Niagara*, No. 23-CV-864, 2025 WL 659389, at *27 (W.D.N.Y. Jan. 31, 2025); *Williams*, 2024 WL 4557444, at *6. "This is because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Chamberlain v. City of White Plains*,

986 F. Supp. 2d 363, 391 (S.D.N.Y. 2013).  But here, the SAC is devoid of any allegations of

prior similar misconduct.  In fact, in her opposition, Plaintiff relies only on her own experience

to argue that Defendants were on notice of a deficiency in their training program, (*see* P's Opp. a

9-10), which is insufficient to plead municipal liability based on failure to train.  *See McCormick*

*v. Cnty. of Westchester*, No. 19-CV-2916, 2023 WL 2632204, at *12 (S.D.N.Y. Mar. 24, 2023)

(failure to allege constitutional violations beyond plaintiff's own experience "dooms his failure-

to-train claim") (collecting cases).  Nor, in the absence of factual allegations about the allegedly

deficient program, can I find it plausible that "the unconstitutional consequences of failing to

train" were "patently obvious" and a "highly predictable consequence of the failure to train."

*Ocasio*, 513 F. Supp. at 326.

      Accordingly, Plaintiff's § 1983 claims must be dismissed.

### D.    Punitive Damages

      Finally, Defendants argue that Plaintiff cannot recover punitive damages against a

municipality.  (*See* Ds' Mem. at 23-24.)  Plaintiff failed to address punitive damages in her

opposition, and thus Plaintiff has abandoned her punitive damages claims.  In any event, I agree

with Defendants that the plain language of Title VII makes clear that government entities are

exempted from the punitive damages provision of Title VII, *see* 42 U.S.C. § 1981a(b)(1); *Cross*

*v. N.Y.C. Transit Auth.*, 417 F.3d 241, 256-57 (2d Cir. 2005), and Title VII claims are the only

ones that survive, so the claims for punitive damages must be dismissed.

## IV.    LEAVE TO AMEND

      Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended her complaint twice, including after having the benefit of Defendants' pre-motion letter, (ECF No. 8), and the discussion at the March 7, 2024 pre-motion conference, (*see* Minute Entry dated Mar. 7, 2024).  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty (NY), Inc*., No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of discretion where plaintiffs "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 n.2 (S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this decision.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be

19

given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice "in the absence of any indication that [plaintiff] could – or would – provide additional allegations that might lead to a different result . . . ."); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendant's] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again).[2]

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## V.    **CONCLUSION**

For the foregoing reasons, the partial motion to dismiss is GRANTED.  The § 1983, state law and punitive damages claims are dismissed.  The case will go forward on the Title VII claims.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 21), and terminate the City of Yonkers Department of Public Works as a defendant.

**SO ORDERED.**

Dated: March 19, 2025
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[2] In addition, as to the state claims, "[t]he problem . . . is substantive; better pleading will not cure it."  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).